IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JIMI ROSE, | : | CIVIL ACTION |
| Plaintiff, pro se | : | |
| | : | |
| vs. | : | |
| | : | |
| BRUCE ROTHROCK, et al., | : | |
| Defendants | : | NO. 08-3884 |

**M E M O R A N D U M**

PRATTER, J.                                                                                                              APRIL 29, 2009

Pro Se Plaintiff Jimi Rose complains that Bruce and David Rothrock, as well as their company Lehigh Valley Hospitality Group ("LVHG"), refused to honor a contract to sell him property because of his race. Defendants filed three motions: a Motion to Dismiss, a Motion to Seal the Complaint or Strike the Complaint of Scandalous and Impertinent Material, and a Motion for Sanctions Pursuant to Rule 11. As set forth below in detail, the various motions are granted in part and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are drawn from the Plaintiff's Complaint. Mr. Rose claims that in November 2007 he entered into negotiations with David Rothrock, an owner and operator of LVHG, to purchase real estate at 300 W. Hamilton Street in Allentown, Pennsylvania. He alleges that the parties orally agreed to a price of $1,200,000, which David Rothrock told him was a reduction from $1,600,000. Relying upon this agreement, Mr. Rose secured financing for the purchase of the property. He attaches as Exhibit A to his Complaint a letter that he wrote to David Rothrock which he claims proves that he had an oral agreement with David Rothrock to

1

purchase the property.[1]

---

[1]The letter from Mr. Rose to Mr. David Rothrock is dated December 30, 2007, and reads in full:

      Re: Agreement for sale of Banana Joe's
      Dear Dave:

      Several weeks ago, you told me that the bar was for sale for $1.2 million, without the liquor license, and would be $1.375 million with the liquor license.  I then faxed you an offer of 1.2 million which would also include the liquor license.  Since this offer to you, I was advised that you and your father lost the liquor license.  This would mean that my offer would go to 1 million dollars without the liquor license.  I am fully aware that your father only paid about $400,000 for the property, and I believe that a 1 million dollar offer is more than generous since, as you put it, you and your family did not want to be in the nightclub business.

      On December 4, 2007, at approximately 2:06PM, I receive a telephone call from your father Bruce, who made it appear to me that you were retarded and didn't know what you were talking about when you quoted a price of $1.2 million for Banana Joe's without a liquor license.  You [sic] father offered to take me to dinner on that Wednesday; I told him that I had a meeting in Harrisburg on Wednesday, but that I would take him up on his offer on Thursday.  Since that time, however, my schedule became extremely busy.  It has not been until now that I have had the opportunity to deal with your father's outlandish offer.

      Your father told me that you didn't know what you were talking about, and that the property was for sale for $2.2 million.  I found this to be extremely bizarre, since you told me that you were initially asking $1.6 million for the property, and you recently reduced the price to $1.2 million without the liquor license and $175,000 for the liquor license.  Secondly, I don't believe that you became CEO of your father's company without knowing numbers and without knowing what you were talking about.  In addition, you are an attorney, and a very good one at that.  Above all this, you are a gentleman, one whom I have admired over the years.

      I am appalled and I am offended that you [sic] father would call me and offer to take me out to dinner, in an attempt to make my transaction with you go away.  My people had $1.2 million on hand to buy this business and property.  The way I see it, with respect to the liquor license and the Liquor Control Board, your father needs all the friends he can get.  You told me that the mayor would make sure that if you lost the current liquor license, he would make sure that you got another liquor license.  It's apparent to me that Mayor Pawlowski is being extremely generous with liquor licenses that are retained by the Liquor Control Board.

      Even though you and I didn't shake hands, a deal is still a deal.  I know your father was very serious about buying me dinner, because he gave me his home number for me to call him.  This indicates that he is doing everything to appease me and to get me to back away from the deal.  They have a name for what your father is attempting to do: bait and switch.  Even though I

On December 4, 2007, Bruce Rothrock, LVHG's other owner and operator, spoke with Mr. Rose and confirmed the agreement but "unilaterally" changed the price to $2,200,000, claiming that David had been confused about the price. Thus, Mr. Rose claims, the Defendants breached their oral agreement to sell him the property. Mr. Rose believes that Bruce Rothrock raised the purchase price when he discovered that Mr. Rose is African American and was capable of paying the original agreed-upon price. Mr. Rose claims that both Messrs. Rothrock knew that he was black prior to agreeing to the sale. He claims to have witnesses to both the oral agreement and the telephone call during which the price was raised. Mr. Rose also alleges that Bruce and David Rothrock conspired to violate his civil rights with other "unknown persons." Compl. at ¶ 27-28.

Mr. Rose's Complaint provides some very colorful allegations that the Rothrocks' treatment of him was discriminatory. Mr. Rose submits that because the Defendants have not identified any other potential buyers, their refusal to sell to him must have been because of his race, not because of competing offers. He notes that the Defendants paid $400,000 for the property originally. He claims that the family of a young African American who was murdered on Rothrock property "might be filing a wrongful death action against Defendants," and that the

---

feel as though I've been victimized, I am hopeful that you will do everything in your power to correct this misunderstanding on the part of your father. I have been extremely distraught and emotionally despondent over this deceptive bait-and-switch game.

    I sincerely hope that we can get this matter straightened out, so as to avoid a future confrontation. Thank you so very much for your time and attention, as I shall remain,

    Respectfully yours,
    Jimi Rose

Rothrocks blame the loss of their liquor license (presumably for the night club situated at the property involved in this dispute) on the "bad behavior" of African Americans on their property, including the incident related to the alleged murder on their property. Compl. at ¶¶ 33-34. He alleges that he will call "white persons" at trial who will testify that the Defendants' actions with respect to the sale of the property were discriminatory. Mr. Rose further alleges that the Defendants do not employ any minorities and have no history of selling to African Americans.

Mr. Rose originally filed a complaint against the Defendants in state court but later withdrew that complaint when he decided that federal court was a more appropriate forum. He also filed a <u>lis pendens</u> against the property in state court, which was dismissed. Defendants brought suit against Mr. Rose to recover attorneys' fees, presumably with regard to the withdrawn state court action and/or the dismissed <u>lis pendens</u> action, and Mr. Rose cites this as a further attempt by the Defendants to punish him for exercising his constitutional rights under the First Amendment and for being African American.

Mr. Rose's Complaint contains two counts. The first cites violations of 42 U.S.C. §§ 1981, 1982, and 1985, for which he claims damages, including lost profits amounting to $1,500,000 a year, expenses incurred in securing investors, emotional damages for public humiliation, punitive damages, pre-judgment interest, and costs and fees. In Count 2, Mr. Rose asserts a claim for breach of contract, for which he claims damages for lost profits amounting to $1,500,000 a year, expenses incurred in securing investors, punitive damages, pre-judgment interest, and costs and fees.

The Court will address each of the Defendants' three motions in turn.

A.   *Motion to Dismiss*

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (quoting Conley, 355 U.S. at 47).  While a complaint need not contain detailed factual allegations, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citations omitted).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 1965 (citations omitted).

In making such a determination, courts "must only consider those facts alleged in the complaint and accept all of those allegations as true." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Twombly, 127 S. Ct. at 1965 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)").  The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences," Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions," Morse v. Lower Merion Sch. Dist., 132 F.3d.

902, 906 (3d Cir. 1997).

To evaluate a motion to dismiss, the Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record and records of which the Court may take judicial notice. See Tellabs, Inc. v. Makor Issues & Rts., 127 S. Ct. 2499, 2509 (2007); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

In the case of pro se pleadings, like the Complaint in this case, such pleadings are liberally construed and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Braithwaite v. Correctional Medical Services, et al., Civil Action No. 07-6, 2008 U.S. Dist. LEXIS 9821, at *3-4 (D. Del. Feb. 11, 2008) (quoting Erickson v. Pardus, --U.S.--, 127 S. Ct. 2197, 2200 (2007) (citations omitted)).

**1.    Section 1981**

To state a claim under 42 U.S.C. § 1981, a plaintiff must allege (1) that the plaintiff is a member of a racial minority, (2) an intent to discriminate on the basis of race by the defendants, and (3) discrimination concerning one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts. Brown v. Philip Morris, Inc., 250 F.3d 789, 797 (3d Cir. 2001). To bring a claim under § 1981, "a contractual relationship need not already exist because § 1981 protects the would-be contractor along with those who already have made contracts." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006).

Defendants argue that Mr. Rose has not sufficiently alleged the second prong–an intent to discriminate on the basis of race by the Defendants. They contend that Mr. Rose's allegation that "[b]oth Rothrocks knew that Plaintiff was black, prior to reaching an agreement with the

Plaintiff," Compl. at ¶ 16, contradicts his claim that the Rothrocks raised the purchase price because of his race.[2] The Defendants cite Brown, 250 F.3d at 797, as an example of a case in which the Third Circuit Court of Appeals upheld the dismissal of a § 1981 claim when the plaintiffs did not aver that the defendants engaged in a discriminatory refusal to deal or claim that the defendants treated African Americans differently from Caucasians. They also direct the Court to Stehney v. Perry, 101 F.3d 925, 938 (3d Cir. 1996), in which the Third Circuit Court of Appeals affirmed the dismissal of an equal protection claim when the plaintiff failed to allege a discriminatory purpose behind a facially neutral policy.

      These cases are easily distinguishable from the case at hand. In Brown, the plaintiffs sued tobacco companies because they claimed that the companies targeted African Americans in their marketing of menthol cigarettes, which is a completely different type of claim than the one here in which Mr. Rose claims that the Defendants refused to honor an agreement to sell real estate to him because of his race. See Brown, 250 F.3d at 793. Thus, while it is true, as Defendants say, that the Brown plaintiffs did not aver that the defendants engaged in a discriminatory refusal to deal or claim that the defendants treated African Americans differently from Caucasians, unlike Mr. Rose the plaintiffs in Brown did not even attempt to allege such claims. As for Stehney, again it appears that the plaintiff there did not even attempt to allege that a facially neutral policy

---

[2] Whether the Rothrocks found out before the alleged oral agreement or after makes no difference. Obviously, if the Defendants agreed to sell property to the Plaintiff and, upon learning that he is African American, repudiated the agreement because of his race, that would be discriminatory. However, it would also be discriminatory to make an agreement with the Plaintiff, knowing his race but believing him to be incapable of actually raising enough money to meet the agreement, and then to change the terms after it became apparent that the Plaintiff could raise the money. Mr. Rose's Complaint could be read to be alleging the latter scenario. See Compl. at ¶ 15, 64.

was adopted "because of" its disproportionate effect on women. Id. at 937-38.

Mr. Rose counters that several paragraphs in his complaint allege facts supporting an intent to discriminate. He cites paragraphs 29 (the Defendants denied the Plaintiff an equal opportunity because of his race), 30 (the Defendants had no other offers, so their refusal to sell to the Plaintiff must have been because of race), 37 (the Plaintiff has witnesses who will testify that the Defendants discriminated on the basis of race with respect to selling the property), 48 (Bruce and David Rothrock "lack training in dealing with minorities" and the Plaintiff was consequently injured; the damage to Plaintiff by Defendants was "premeditated"), and 72 (the Defendants refused to sell the property to Mr. Rose because of his skin color). The Court also notes that Mr. Rose claims that the Defendants "have no history of selling to black people," Compl. at ¶ 50; that the "purpose of [Defendants'] real estate transactions is to bring and cause injury to minorities," Compl. at ¶ 58; and that "the Defendants have all but excluded minorities from all of their businesses," Compl. at ¶ 60. Whether the Plaintiff will be able to prove any of these allegations at a later stage of this case is not for the Court to decide at this time. Given that the Court must accept Mr. Rose's allegations as true and that pro se complaints should be liberally construed, Mr. Rose has alleged enough regarding the Defendants' allegedly discriminatory intent to survive a motion to dismiss. See, e.g., Allen v. Washington Hosp., Civil Action No. 96-1950, 1997 U.S. Dist. LEXIS 14606, at *5-6 (W.D. Pa. May 30, 1997) (denying motion to dismiss when plaintiff alleged that the defendants refused to provide him with an application for appointment to a medical staff position solely because of race); Tucker v. Merck & Co., No. Civ. A. 03-5015, 2004 WL 350467, at *3 (E.D. Pa. Feb. 18, 2004) (holding that second prong was satisfied when "complaint explicitly alleges that defendant intentionally discriminated against [plaintiff] on the

basis of race").

**2.     Section 1982**

Section 1982 prohibits racial discrimination in transactions relating to real and personal property by securing the right of all citizens to "inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Much like claims under § 1981, to state a claim under 42 U.S.C. § 1982, a plaintiff must allege "1) the defendant's racial animus; 2) intentional discrimination; and 3) that the defendant deprived plaintiff of his rights because of race." Brown, 250 F.3d at 797 (3d Cir. 2001) (internal citations omitted). These elements are "virtually identical" to those of § 1981. See Soo San Choi v. D'Appolonia, 252 F.R.D. 266, 272 (W.D. Pa. 2008). Not surprisingly, then, the Defendants set forth the same arguments regarding the insufficiency of Mr. Rose's § 1982 claim as they did regarding the insufficiency of his § 1981 claim, and those arguments must fail for the same reasons as they did with regard to that claim.

**3.     Section 1985**

Section 1985(3) allows claims by plaintiffs who are injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To state a § 1985(3) claim, a plaintiff must sufficiently allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws;[3] and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

---

[3] To satisfy this element, a plaintiff must allege racial animus, similar the requirement under both § 1981 and § 1982. Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006) (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

9

Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) (internal quotations omitted).

The Defendants contend that Mr. Rose's § 1985(3) claim must fail because a violation of § 1981 or § 1982 can not support a § 1985(3) claim against private actors. They cite Brown v. Philip Morris, Inc., 250 F.3d 789 (3d Cir. 2001), as support.

The Brown Court stated that "in the context of actions brought against private conspirators, the Supreme Court has thus far recognized only two rights protected under § 1985(3): the right to be free from involuntary servitude and the right to interstate travel." Id. at 805. The court of appeals notes that the "great weight of precedential authority" suggests that violations of federal statutes like §§ 1981 and 1982 may not form the basis of a § 1985(3) action. Id. at 806. These statements are dicta, however, and therefore are merely persuasive as opposed to controlling. A subsequent unpublished case, Magnum v. Archdiocese of Philadelphia, 253 Fed. Appx. 224, 230 (3d Cir. 2007), cited this reasoning from Brown with approval, however, and held that plaintiffs' failure to allege any violations of constitutional rights protected against private encroachment doomed their § 1985(3) claim.

Several courts in this district have also used the reasoning in Brown to support their dismissal of § 1985(3) claims. See, e.g., Collins v. Christie, Civil Action No. 06-4702, 2007 WL 2407105, at *11 (E.D. Pa. Aug. 22, 2007) (dismissing § 1985(3) claim that was based on § 1981 violation because of the "strong language of the Court of Appeals" supporting such a holding); McLease v. R.R. Donnelley & Sons Co., 226 F. Supp. 2d 695, 702 (E.D. Pa. 2002) (dismissing § 1985(3) that was based on § 1981 in light of the "grave doubt" cast upon such a claim by the Third Circuit Court of Appeals); Dixon v. Boscov's, Inc., No. CIV. A. 02-1222, 2002 WL 1740583, at *2-3 (E.D. Pa. July 17, 2002) (adopting Brown's dicta and dismissing § 1985(3)

claim that was based on a § 1981 claim).  But see Abdulhay v. Bethlehem Medical Arts, L.P., No. Civ. A. 03-CV-04347, 2004 WL 620127, at *6-9 (E.D. Pa. Mar. 29, 2004) (noting that restrictions on the basis of § 1985(3) claims in Brown were part of dicta and allowing § 1985(3) claim based on § 1981 and/or § 1982).

This Court elects to follow the logic and persuasive power of Brown's dicta, and will therefore dismiss Mr. Rose's § 1985(3) claim.

**4.      Breach of Contract**

Defendants also challenge the sufficiency of Mr. Rose's breach of contract claim.  As an initial matter they note that contracts for sale of real property must be in writing to comply with the statute of frauds.  See Defs.' Mot. to Dismiss at 14, citing Hostetter v. Hoover, 547 A.2d 1247, 1250 (Pa. Super. 1988).  Mr. Rose acknowledges this, but notes that while an oral contract for the sale of land may not be specifically enforced, it can still form the basis for the recovery of damages.  See Empire Properties, Inc. v. Equireal, Inc., 674 A.2d 297, 301 (Pa. Super. 1996).

In either case, the Plaintiff must still sufficiently plead the existence of a contract.  It is hornbook law that "[a] contract is formed when the parties to it 1) reach a mutual understanding, 2) exchange consideration, and 3) delineate the terms of their bargain with sufficient clarity." Weavertown Transport Leasing, Inc. v. Moran, 834 A.2d 1169, 1172 (Pa. Super. 2003). Although Mr. Rose does state in his Complaint that he reached an oral agreement with Defendant David Rothrock before Bruce Rothrock called and raised the price on the property in breach of the alleged agreement, Mr. Rose attaches as an exhibit to his Complaint his own letter which contradicts his allegation of agreement.  That letter, set forth in full supra at n.1, demonstrates that, at most, David Rothrock made an offer to Mr. Rose, and Mr. Rose made two counteroffers

11

that apparently were not accepted.  Indeed, the fact that Mr. Rose made an additional counteroffer after his offer of $1.2 million "without the liquor license" shows that there was no agreement between the parties for the sale of the property at $1.2 million, with or without a liquor license.  While the Court must accept as true all allegations in a Complaint, it is not obliged to ignore exhibits that directly contradict those allegations, especially inasmuch as a Plaintiff himself has authored and offered the exhibit.  See, e,g., WP 851 Assoc., L.P. v. Wachovia Bank, N.A., Civil Action No. 07-2374, 2008 WL 114992, at *8-9 (E.D. Pa. Jan. 10, 2008) (dismissing a claim when an exhibit attached to the complaint contradicted the allegations in the complaint); Centrella v. Barth, 633 F. Supp. 1016, 1019 (E.D. Pa. 1986) ("We accept as true the allegations of the complaint insofar as they are specific, factual and not contradicted by plaintiff's exhibits.")  Because the Complaint, including exhibits, does not sufficiently allege the existence of a contract, Mr. Rose's claim for breach of contract must be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is granted with regard to Mr. Rose's breach of contract and § 1985(3) claims and denied with regard to Mr. Rose's §§ 1981 and 1982 claims.

B.      *Motion to Seal the Complaint or to Strike the Complaint of Scandalous and Impertinent Material*

**LEGAL STANDARD**

There is a "'strong presumption' of openness" with regard to access to judicial records, and "[t]he party seeking to seal any part of a judicial record bears the heavy burden of showing that the 'material is the kind of information that courts will protect' and that 'disclosure will

12

work a clearly defined and serious injury to the party seeking closure.'" Miller v. Indiana Hosp., 16 F.3d 549, 551 (3d Cir. 1994) (quoting Publicker Indus., Inc. v. Cohen, 773 F.2d 1059, 1071 (3d Cir. 1984)).  "The injury must be shown with specificity."  Publicker, 773 F.3d at 1071.  In deciding a motion to seal, a district court must make specific findings regarding the interest to be protected and must ensure that any order sealing a proceeding is narrowly tailored to serve that interest.  Id.  The Third Circuit Court of Appeals has set forth several considerations for district courts deciding such motions, including the parties' interest in privacy, whether the disclosure will cause embarrassment, whether the information is important to public health and safety, whether any party involved is a public official, and whether the case involves issues important to the public.  Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995) (citing Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787-91 (3d Cir. 1994)).

Under Rule 12(f) of the Federal Rules of Civil Procedure, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  "The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent or scandalous matter which will not have any possible bearing on the outcome of the litigation."  Garlanger v. Verbeke, 223 F. Supp. 2d 596, 609 (D.N.J. 2002) (quoting Bristol-Myers Squibb Co. v. Ivax Corp., 77 F. Supp. 2d 606, 619 (D.N.J. 2000)).  However, motions to strike are generally viewed with disfavor by the courts and "are often not granted if there is an absence of showing of prejudice to the moving party."  Great W. Life Assurance Co. v. Levithan, 834 F. Supp. 858, 864 (E.D. Pa. 1993).  Striking a pleading is a "drastic remedy" appropriate only when the grounds for striking are "readily apparent from the face of the pleadings."  Johnson v.

Anhorn, 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004) (internal citations omitted).

To prevail, the moving party must demonstrate that "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties or [that] the allegations confuse the issues." River Road Development Corp. v. Carlson Corporation-Northeast, No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990) (citing 5C C. Wright & A. Miller, Federal Practice and Procedure, § 1382, at 809-10, 815 (1969)).

**DISCUSSION**

Defendants argue that the Court should seal the Complaint in this case because, despite the common law right of public access to court records, allowing this Complaint to remain unsealed would work a serious injury to their personal and professional reputations. They characterize the Complaint as a "hateful attack designed to continue [Plaintiff's] pattern of abusing the legal system to harass and embarrass Defendants." Defs.' Mot. to Seal or Strike at 6. They contend that by not sealing the Complaint, the Court will allow the use of baseless rumors as tools for extortion. Mr. Rose has not responded to this motion.

The Defendants cite to a number of cases to support their position, all of which are distinguishable to at least some extent and at least one of which actually weighs against granting the Defendants' motion to seal. For instance, Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 998 F.2d 157 (3d Cir. 1993), which Defendants cite in arguing that the "real chance of embarrassment and public harm to Defendants' reputation and business are sufficient reasons for sealing Plaintiff's Complaint," Defs.' Mot. to Seal and/or Strike at 6, involved documents containing trade secrets and other confidential business information, a category of information for which the potential harm of disclosure is widely recognized. See Leucadia, 998 F.2d at 166;

see also Fed. R. Civ. P. 26(c)(7) (specifically mentioning trade secrets as a category of information which may be covered by a protective order). Defendants also cite U.S. v. Smith, 776 F.2d 1104 (3d Cir. 1985), and U.S. v. Kemp, 365 F. Supp. 2d 618 (E.D. Pa. 2005), as examples of cases in which interests in privacy and reputation override the public's right of access to court records. Those cases, however, involve the reputations of third parties who "would have no meaningful opportunity to respond" to any allegations of criminal activity because they were not part of the case, Smith 776 F.2d at 1107, and grand jury materials and communications protected from public disclosure by Title III, Kemp, 365 F. Supp. 2d at 620. The Defendants in this case have every opportunity to respond on the record to the allegations in the Complaint, and this Complaint clearly is not subject to any statutes protecting it from disclosure, as was the case with the materials involved in the Kemp case.[4]

Defendants quote from Dombrowski v. Bell Atlantic Corp., 128 F. Supp. 2d 216 (E.D. Pa. 2000), to support their argument that serious embarrassment may be enough to entitle a party to the protection from disclosure of judicial records, but the Dombrowski court also pointed out that:

> [w]hile the defendants and some of their employees may well be embarrassed by the unsealing of the non-privileged paragraphs of the complaint, we do not believe that it is sufficient here to meet the good cause requirement in Pansy. Indeed, pleadings are filed every day with allegations that may embarrass the opposing party. If mere embarrassment were enough, countless pleadings as well as other judicial records would be kept from public view.

---

[4] Doe v. Shapiro, 852 F. Supp. 1256 (E.D. Pa. 1994), comes closer to the case at hand, in that Doe involved private citizens engaged in a conflict that had no particular public interest or effect on public health and safety. However, Doe involved more than disputed allegations of bad conduct–it involved private medical information (i.e., information about the plaintiff's AIDS diagnosis) that was not in dispute. See id. at 1257.

Id. at 219 (holding that other than a few paragraphs containing information protected by the attorney-client privilege, the complaint would not be sealed).  Similarly, in Rossi v. Schlarbaum, Civil Action No. 07-3792, 2008 Wl 222323 (E.D. Pa. Jan. 25, 2008) (not cited by the Defendants), despite the "highly-charged" nature of the litigation and the potential that the allowing "highly personal" facts to become public could produce "unnecessary shame and embarrassment," "damage to reputation, friendships, and family life," and destroy the defendants' "personal and professional lives," the court found that the defendants had failed to establish good cause to seal the record.  Id. at *1-3 (internal quotations omitted).  In that case, as in this one, the defendants alleged that the case was being used merely to "defame [the defendants] and to pressure them to settle, irrespective of the merits of the case."  Id. at *1.

On balance, the Defendants arguments for sealing the Complaint do not outweigh the strong presumption of openness of judicial records.  The Defendants have not shown that this highly contentious and emotionally charged litigation is any different from the other discrimination cases filed with great frequency in federal court such that they are any more susceptible to embarrassment and humiliation than any other defendant in such a case.  Therefore, the Court will not order that the Complaint be placed under seal.

As to the Defendants' Motion to Strike,[5] the Defendants argue that 27 paragraphs of the Complaint "contain malicious lies and hateful rhetoric, which are scandalous, immaterial and impertinent to this case."  Defs.' Mot. to Seal or Strike at 8-10.  The Defendants do not detail individually why each of these 27 paragraphs should be struck.  While it is obvious that at least some of the paragraphs the Defendants identify are immaterial and use "repulsive language" and

---

[5] Again, Mr. Rose did not respond to this motion.

16

"detract from the dignity of the court," as to other paragraphs the Defendants have failed to carry the burden of demonstrating that those other paragraphs must be struck. Thus, because of their extraneous and inflammatory hyperbole,[6] the Court will strike the following paragraphs or portions thereof: the last sentence of paragraph 25, the last sentence of paragraph 32, the second sentence of paragraph 58, all of paragraph 61, and all of paragraph 70. As to the other 22 paragraphs with which the Defendants take issue, the Court will deny this motion without prejudice to Defendants to re-file a motion specifically detailing why they believe that each of those paragraphs also should be struck.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Seal or Strike is granted in part and denied in part.

C.  *Motion for Sanctions*

**LEGAL STANDARD**

Under Rule 11(b) of the Federal Rules of Civil Procedure:

By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for

---

[6] Mr. Rose is urged to consider carefully his obligation as a pro se litigant in this Court to comport himself with civility at all times. He, just as any counseled litigant, may not use the court for uncontrolled "venting" and, like attorneys, he must adhere to the rules of the Court.

17

establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  A party may move for sanctions if the opposing party violates this rule, the movant provides that opposing party with notice, and the opposing party fails to withdraw the offending pleading or motion within 21 days of service of the notice.  Fed. R. Civ. P. 11(c).  "Rule 11 is intended for only exceptional circumstances."  Morristown Daily Record, Inc. v. Graphic Comm. Union, Local 8N, 832 F.2d 31, 32 n.1 (3d Cir. 1987).  The appropriate standard for review is whether the litigant or attorney acted reasonably under the circumstances.  Gaiardo v. Ethyl Corp., 835 F.2d 479, 482 (3d Cir. 1987).

**DISCUSSION**

In their Motion for Sanctions, Defendants for the most part reiterate the arguments from their Motion to Dismiss, this time framing them as reasons why Mr. Rose's Complaint is frivolous.  They also add that they believe that Mr. Rose filed his Complaint merely to harass them.  As evidence, they attach a letter from Mr. Rose to the Rothrocks, in which Mr. Rose threatens to sue the Rothrocks and their attorney if they sue him.  Defs.' Mot. for Sanctions at Ex. B.  In the letter, Mr. Rose, in the midst of rather colorful and sometimes threatening language, notes that he withdrew his Lehigh County action in favor of pursuing his claims in federal court.  Id.  Defendants interpret this letter as evidence that Mr. Rose sued them merely to harass them and charge that he is a serial litigator.

Mr. Rose counters that the Defendants' motion is nothing more than an attempt to pressure him to drop his legitimate case against them.  He stands by his arguments in opposition to the Defendants' Motion to Dismiss and argues that he, and not the Defendants, is the one who is subject to harassment.  He does not deny that the Defendants followed procedure and served him with a copy of the motion, giving him a chance to withdraw his Complaint before the motion for sanctions was actually filed.

At this stage of the case, the Defendants' Motion for Sanctions is premature.  The Defendants have not yet presented evidence that the Plaintiff's allegations are actually false and that Mr. Rose knew or should have known that when he filed the Complaint.  Because two of Mr. Rose's four claims have survived the Motion to Dismiss, the Court can not say that the Complaint was frivolous as filed.  Thus, the Court will deny the Defendants' Motion for Sanctions, without prejudice to re-file at a later date if appropriate.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Sanctions is denied.

An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE
